# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

STEVE CONREY                                                                PLAINTIFF

VS.                        CASE NO. 3:18CV00232 PSH

NANCY A. BERRYHILL, Commissioner,
    Social Security Administration                                    DEFENDANT

# ORDER

Plaintiff Steve Conrey ("Conrey") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny his claim for Supplemental Security Income ("SSI"). Conrey contends the Administrative Law Judge ("ALJ") erred in the following ways: (1) failing to credit the treating physician's opinion on limitations in fingering and handling or, in the alternative, failing to develop the record on his ability to finger and handle; (2) failing to properly determine his residual functional capacity ("RFC"); and (3) failing to identify jobs which he could perform, failure to obtain a reasonable explanation for contradictions between testimony of the vocational expert and the *Dictionary of Occupational Titles* ("DOT"), and failing to elicit any vocational evidence regarding limitations in fingering or handling. The parties ably summarized the medical records and the testimony given at the administrative hearing, which was conducted on August 29, 2017. (Tr. 9-34). The Court has carefully reviewed the record to determine whether there is substantial evidence to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period to be considered is from April 21, 2016, Conrey's application date, through April 2, 2018,

1

the date the Commissioner issued her decision.

*The Administrative Hearing:*

Conrey, a high school graduate, was 47 years old at the time of the administrative hearing, with past relevant work as a dump truck driver, melter in a factory, and petroleum truck driver. Conrey identified his medical problems as diabetes, peripheral neuropathy radiating from his feet through his knees and hips, numbness and tingling in his hands, high blood pressure, chronic obstructive pulmonary disorder ("COPD"), asthma, hyperhydrosis, muscle spasms in his arms, and arthritis in his major joints. According to Conrey, his diabetes is unpredictable and results in emergency hospital visits. He indicated his numbness in his hands and feet has been present for about two and a half years. Conrey estimated he could stand for 10-15 minutes, walk for 5-6 minutes, lift 10-15 pounds, and sit for 15-20 minutes. He listed the following medications he was taking: Novolog, Meloxicam, Advair disc, Sertaline, an inhaler, Gabapentin, Tramadol, and Loratadine. He stated he sometimes gets sleepy, has a dry mouth, and an aggravation of his hyperhydrosis as side effects of the medications. Conrey indicated he goes for emergency care when unable to stabilize his blood sugar by eating. He stated he allows himself 1-2 hours to try and stabilize his blood sugar before going to the hospital. Conrey testified he sought emergency care 1-2 times a year, and that he "is fighting this [diabetes] every day." (Tr. 29).

As for daily activities, Conrey typically walks next door and visits his dad. Conrey stated he lives alone and prepares many of his meals, does laundry, mops and sweeps in "spurts," and grocery shops once a month. (Tr. 22). He testified that he rode a motorcycle 3-4 days before the hearing, hunted in the last year, and fished from a boat three weeks before the hearing. (Tr. 14-30).

Beth Clem ("Clem"), a vocational expert, also testified. The ALJ asked Clem to assume a

2

hypothetical worker of Conrey's age and background, with the ability to do sedentary work with the following restrictions: an option to sit/stand such that the worker would be standing and walking no more that 10-15 minutes at a time; could sit for intervals of up to 30 minutes at a time; avoid exposure to excessive airborne irritants, dust, fumes, and heat; able to understand, remember, and carry out simple job instructions, able to make decisions or judgments in simple work-related situations, able to respond appropriately with co-workers and supervisors, and able to respond appropriately to minor changes in the usual work routine; and limited in sensation in the fingertips such that the worker could not discern an object by feeling.[1] Given those parameters, Clem stated such a hypothetical worker could not perform Conrey's past relevant work but could perform the jobs of machine tender and surveillance monitor. Clem noted that the DOT does not address the sit/stand option, "so my testimony in regards to that part of the hypothetical comes from job shadowing of these jobs." (Tr. 32). Clem agreed that a worker who was unable to sustain attention, concentration, or an acceptable work pace, or a worker absent more than two days each month would not be able to perform the jobs she cited. Both the jobs mentioned by Clem were unskilled, sedentary jobs with an SVP[2] of 2. (Tr. 30-33).

*The ALJ's Decision:*

In his April 2, 2018, decision, the ALJ found Conrey had the following severe impairments:

---

[1] The ALJ described the last restriction: "assuming it didn't affect the ability to finger, but just the ability to discern, so in a way, it's like if you were trying to pick up something without looking at it, you might have difficulty, but if you were looking at what you were picking up, you could." (Tr. 33).

[2] SVP, or specific vocational preparation, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility to perform a job. An SVP of 2 means the job can be learned in one month or less. DOT, Appendix C.

3

type 1 diabetes mellitus; peripheral neuropathy; COPD; asthma; hypertension; unspecified depressive disorder; and unspecified anxiety disorder. The ALJ considered the impairments of hyponatremia, muscle spasms, severe dehydration, urinary obstruction, recurrent dislocation of his right shoulder, high cholesterol, hyperhidrosis, and left hip and leg problems, finding these alleged impairments were non severe. The ALJ concluded Conrey's impairments did not meet a listed impairment, explicitly noting he considered Listings 2.00, 11.00, 12.04 and 12.06.

The ALJ determined Conrey had the RFC to perform sedentary work with restrictions which mirrored those posed by the ALJ to Clem in the hypothetical question. In reaching his RFC conclusion, the ALJ considered Conrey's subjective statements, finding they were "not credible to the extent they are inconsistent" with the ALJ's RFC determination. (Tr. 74). The ALJ addressed the medical evidence during the relevant period, as well as medical records pre-dating the period, thoroughly detailing the medical records from 2012 forward. During the relevant period, the ALJ addressed the treatment records from the following sources: Family Physician of Jonesboro Clinic; Christopher Dow, a licensed psychological examiner at Mid-South Health Systems; emergency room records from St. Bernard's Regional Medical Center, including a neurodiagnostics report from Dr. Nicholas W. Guinn ("Guinn"); Dr. Kevin Ganong ("Ganong"), a treating physician since April 2015 at NEA Baptist Clinic; Dr. Brandon Byrd ("Byrd") at Dickson Orthopedics; Dr. Dhivya Sugumar ("Sugumar"), another physician at NEA Baptist Clinic; Dr. Christopher W. Rowlett ("Rowlett"), a podiatrist at NEA Baptist Clinic;[3] and Dr. Yuanyuan Long ("Long"), a neurologist at NEA Baptist Clinic. The ALJ also addressed lab results, x-rays, and MRI findings. The ALJ ultimately found

---

[3] In addition to Rowlett's treatment notes, the ALJ also considered Rowlett's Medical Source Statement of June 6, 2017. (Tr. 1257-1258).

the objective medical findings "fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (Tr. 81). The ALJ assessed Conrey's daily activities as "not indicative of an individual who is completely unable to work." (Tr. 80). Finally, the ALJ commented on Conrey's work history, which reflected he "only worked sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." (Tr. 80).

In concluding his analysis, the ALJ determined Conrey could not perform his past relevant work. However, relying upon Clem's testimony, the ALJ held that Conrey was able to perform other jobs in the national economy, such as the jobs of machine tender and surveillance monitor. Therefore, he found Conrey not disabled. (Tr. 67-86).

**Error in failing to credit Rowlett's opinion on limitations in fingering and handling or, in the alternative, failing to develop the record on his ability to finger and handle.**

Rowlett examined Conrey one time, on June 6, 2017. Conrey presented as a new patient with his chief complaint muscle contractions in both feet. Rowlett's physical exam showed Conrey to have "near constant fasciculation[4] of his toes and feet." (Tr. 1265). Rowlett also recorded vascular issues with Conrey's feet, and scaling around the plantar surfaces of the foot. Rowlett diagnosed Conrey with diabetic polyneuropathy associated with type 1 diabetes mellitus, type 1 diabetes mellitus not at goal, hereditary and idiopathic peripheral neuropathy, tinea pedis of both feet, and abnormality of gait. The treatment plan going forward included a prescription for lotrisone and a neurology consult. Rowlett noted Conrey was "having trouble controlling the movement of his body

---

[4] Fasciculation is muscular twitching involving the simultaneous contraction of contiguous groups of muscle fibers. www.merriam-webster.com/dictionaryfasciculation.

which is now interfering with his walking." (Tr. 1266). Conrey was to return to the clinic in six months. (Tr. 1264-1266).

On the same day of the examination, Rowlett executed a Medical Source Statement – Physical, indicating Conrey had the following limitations: lift and carry less that 10 pounds occasionally; lift and carry less than 10 pounds frequently, stand and walk less than two hours a day, with a maximum of standing/walking 30 minutes at a time; no limitation on ability to sit; unable to reach in all directions; unable to finger; able to handle for 1/3 of a workday; never climb, balance, stoop, kneel, crouch, or bend; would need frequent and longer than normal breaks, and would need the opportunity to shift at will from sitting or standing/walking; medications could cause a decreased ability to concentrate and persist, requiring him to be redirected to the task at hand very frequently; avoid all exposure to extreme cold and high humidity; avoid moderate exposure to extreme heat and sunlight; and avoid concentrated exposure to fumes, odors, dust, gas, perfumes, soldering fluxes, solvents/cleaners, and chemicals. Rowlett indicated Conrey's impairments would result in absence from work about 3 days each month. "Uncontrolled diabetes" was listed as the objective medical finding which supported the limitations cited by Rowlett. (Tr. 1258).

Conrey contends the ALJ erred in failing to credit Rowlett's opinion, contained in the Medical Source Statement – Physical checklist, concerning limitations in his ability to finger and handle. Initially, the parties are at odds over whether Rowlett is a treating physician. This is significant since a treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. *See Choate v. Barnhart*, 457 F.3d 865 (8th Cir. 2006). The ALJ did not deem Rowlett to be a treating physician, stressing the sole visit by Conrey.

6

The Court disagrees with this conclusion. The fact that Rowlett examined Conrey one time does not make him less than a treating physician. Rowlett was one of several physicians at NEA Baptist Clinic who treated Conrey, and the Court views him as a treating physician. Even so, the ALJ's error in failing to deem Rowlett a treating physician was harmless. Rowlett's opinion was properly discounted because it varied from the findings in Rowlett's own treatment notes. *Gates v. Commissioner, Social Security Administration*, 721 Fed.Appx. 575 (May 14, 2018). Conrey was seen by Rowlett for foot problems, and the treatment notes focus almost exclusively on foot impairments. As a result, the opinions expressed in the Medical Source Statement – Physical do not correspond with Rowlett's medical findings. Further, other medical evidence of record is at odds with Rowlett's opinion that Conrey was unable to finger and able to handle for 1/3 of a workday. For example, Byrd saw Conrey in May 2017 and diagnosed him with bilateral hand peripheral neuropathy. Byrd specifically found full range of motion and strength in Conrey's hand, and noted "most of his sensation loss is in the distal phalanx of his fingers with no particular nerve pattern." (Tr. 1211). Byrd's plan was for conservative treatment with wrist splints, and Conrey was to contact Byrd is he had continuing pain or problems. Byrd ordered wrist x-rays and reported "no acute findings and no chronic findings" and "overall normal x-rays." (Tr. 1209). Finally, no fingering or handling deficits were noted when Conrey received emergency room care for his diabetes in August 2017. His musculoskeletal examination was recorded as "equal strength upper extremities, equal strength lower extremities." (Tr. 1324). While a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight, such an opinion may be discounted or even disregarded where other medical assessments are supported by better or more thorough

7

medical evidence. *Fentress v. Berryhill*, 854 F.3d 1016 (8th Cir. 2017).

In summary, the ALJ should have considered Rowlett to be a treating physician. The ALJ's error in this regard, however, is harmless because Rowlett's opinion on fingering and handling is not supported by his own treatment notes, and also inconsistent with other objective medical findings in the record. Even assuming Rowlett to be a treating physician, the ALJ appropriately found his opinions on fingering and handling "not persuasive." (Tr. 84).

Conrey argues, in the alternative, that the ALJ failed to adequately develop the record on fingering and handling. Even though Conrey is correct that the ALJ has a duty to fully and fairly develop the record, he fails to demonstrate how the record, which appears to contain all treatment records during the relevant period, was inadequate and how additional reports would cure the inadequacy. The objective medical evidence in this case was ample and the ALJ's decision was well-informed. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional medical exams unless the existing medical record is insufficient). Conrey was treated by numerous physicians during the relevant period, as described herein. X-rays and MRIs were also obtained during the relevant period. There is no showing that additional examinations were required to ascertain Conrey's condition. Under these circumstances, the Court finds no error in the ALJ's reliance upon the record before him.

**ALJ error in failing to properly determine his RFC.**

It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In this instance, the ALJ limited Conrey, in pertinent part, by finding him unable to perform tasks that

require the ability to feel size, shape, or texture with his fingertips. (Tr. 72). Conrey contends this RFC determination was supported by no objective medical evidence. The Court disagrees.

The ALJ was tasked with examining all of the evidence to formulate his RFC. The ALJ's decision cites findings by Rowlett, Byrd (who diagnosed bilateral hand peripheral neuropathy and proceeded conservatively), and Guinn (who diagnosed severe peripheral neuropathy). (Tr. 1162, 1209-1211, 1264-1266). In addition, other medical care providers reported normal findings. The undersigned's inquiry is not whether the ALJ should have embraced one physician to the exclusion of the others, but whether substantial evidence exists for the ALJ's conclusions based upon a consideration and assessment of all of the evidence. The Court finds substantial evidence exists in this instance, and concludes there is no merit to the second claim for relief.

**ALJ error in failing to identify jobs which Conrey could perform, failure to obtain a reasonable explanation for contradictions between testimony of the vocational expert and the *Dictionary of Occupational Titles* ("DOT"), and failing to elicit any vocational evidence regarding limitations in fingering or handling.**

Clem identified two jobs which Conrey could perform – machine tender and surveillance monitor. Conrey first contends it was error to cite these jobs because the reasoning level required of these jobs exceeded his abilities as found by the ALJ. The parties agree that the job of machine tender requires a reasoning level of 2 and the surveillance monitor job carries with it a reasoning level of 3.[5] In addition, both parties cite *Thomas v. Berryhill*, 881 F.3d 672 (8th Cir. 2018), in

---

[5] For comparison's sake, level 1 reasoning requires a worker to apply commonsense understanding to carry out one- to two-step instructions and to deal with standardized situations with occasional or no variables in or from those situations encountered on the job. Level 2 reasoning requires a worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and to deal with problems involving a few concrete variables in or from standardized

9

support of their positions. In *Thomas*, the Court found an apparent conflict existed between an RFC limitation to one to two steps tasks and reasoning level three jobs, explaining:

> By incorporating the definition of level-one reasoning into the RFC, the ALJ indicated "that [Thomas] could perform only occupations at [that] reasoning level." *See Moore v. Astrue*, 623 F.3d at 604. An apparent conflict thus existed between the vocational expert's testimony that someone limited to "1 to 2 step tasks" could work as a new accounts clerk and the DOT description that being such a clerk involves a higher level of reasoning. *See Rounds v. Comm'r of SSA*, 807 F.3d 996, 1003 (9th Cir. 2015); *see also Porch v. Chater*, 115 F.3d 567, 571–72 (8th Cir. 1997). Because that conflict was "apparent" and not just "possible," the ALJ needed to do more than have the expert affirm that his testimony was consistent with the DOT. *Moore v. Colvin*, 769 F.3d at 990. Under the Commissioner's own policy, the ALJ was required to elicit from the expert an opinion on whether there is a "reasonable explanation" for the conflict and determine whether the expert's testimony warranted reliance despite the conflicting information in the DOT. *Id.* at 989–90. In the absence of that inquiry, the expert's testimony did not constitute substantial evidence on which the Commissioner could rely to conclude that Thomas was not disabled due to the existence of jobs in the national economy that she can perform.

881 F.3d at 678.

There is a difference in the limitations found in this case when compared with *Thomas*, where the language used by the ALJ mirrored the DOT definition of level 1 reasoning – "1 to 2 step tasks." The ALJ found Conrey had the ability to understand, remember, and carry out simple job instructions, make decisions/judgments in simple work-related situation, and respond to minor changes in the usual work routine. These limitations are beyond level 1 reasoning, and the undersigned finds no conflict between these limitations and the performance of the job of machine tender. *See Smithee v. Social Security Administration*, 2018 WL 3132603, No. 3:17cv175 (E.D. Ark. June 16, 2018) (the ALJ's hypothetical question to the VE limited the plaintiff to "simple, routine,

---

situations. Level 3 reasoning requires a worker to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and to deal with problems involving several concrete variables in or from standardized situations. 2 DOT at 1011.

and repetitive tasks; simple work-related decisions; simple, direct supervision; and incidental interpersonal contact with co-workers and the public;" the vocational expert testified the plaintiff could perform the job of price tagger, with a reasoning level of 2; and the Court found price tagger job was not beyond the limitations assigned by the ALJ, so that there was no unresolved conflict between the VE's testimony and the DOT).[6] The ALJ did not err in finding that the job of machine tender fell within the limitations set forth in the RFC.

Conrey next complains that two additional conflicts between the vocational evidence and the DOT were not addressed as they relate to the surveillance monitor job. He does not make the same claims as to the machine tender job.[7] Conrey does not establish error because the ALJ's finding that Conrey could perform the machine tender job satisfies the Step 5 burden placed on the ALJ of identifying jobs in the national economy which could be performed. The Court need not, and does not, express an opinion on whether the ALJ erred in failing to explain conflicts with the surveillance job and the DOT. Any apparent conflicts between these limitations and the surveillance monitor job do not apply to the machine tender job, and any such error would be harmless.

Conrey's final contention is ALJ error in neglecting to include additional manipulative restrictions in the hypothetical question posed to Clem. Although this argument is framed as a

---

[6] The undersigned need not, and does not, express an opinion on whether the job of surveillance monitor conflicted with Conrey's RFC.

[7] The first conflict relates to the ALJ's sit/stand findings and the DOT. This conflict was addressed as relates to the machine tender job. The second conflict relates to the ALJ limiting Conrey to "only incidental and occasional contact" with co-workers and supervisors and no interaction with the public. Conrey argues this limitation is inconsistent with the surveillance monitor job. He does not claim, however, that it is inconsistent with the machine tender job.

challenge to the hypothetical question, the essence of the contention is that the RFC was inadequate. The Court has previously addressed the RFC and found substantial evidence supported the ALJ's decision. It follows that the hypothetical question which incorporated this RFC was appropriate.

In summary, substantial evidence supports the ALJ's findings. The Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence exists to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Conrey's complaint is dismissed with prejudice.

IT IS SO ORDERED this 8th day of August, 2019.

_____
UNITED STATES MAGISTRATE JUDGE